UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

M.B. COTTINGHAM,
  2335 25th Street SE
  Washington, D.C. 20020,

                    Plaintiff,

        v.

SEAN LOJACONO,
  c/o Office of the Attorney General
  441 4th Street NW
  Washington, D.C. 20001,

                    Defendant.

No. _____

**JURY TRIAL DEMANDED**

**COMPLAINT FOR DAMAGES**
(Unreasonable Search and Seizure)

**INTRODUCTION**

In this civil rights action, M.B. Cottingham, a lifelong D.C. resident, asserts his basic constitutional right to socialize on the streets of his own city without being subjected to public invasions of his privacy and bodily integrity.

Late in the afternoon of September 27, 2017, in a peaceful encounter with D.C. police concerning an open container of alcohol, Mr. Cottingham gave Officer Sean Lojacono permission to frisk him. Ranging far beyond what should have been a limited pat-down for weapons, Officer Lojacono jammed his fingers between Mr. Cottingham's buttocks and grabbed his genitals. Mr. Cottingham physically flinched and verbally protested, making clear that this highly intrusive search was not within the scope of the frisk to which he had consented. Officer Lojacono responded by handcuffing Mr. Cottingham and returning to probe the most sensitive areas of his person — two more times.

1

No warrant, probable cause, reasonable suspicion, or consent justified the scope of these probes, which were conducted in broad daylight in public and with no other discernible reason than to humiliate and degrade Mr. Cottingham and to display the officer's power over him. The escalation of a low-level stop into a public body-cavity search was an affront to Mr. Cottingham's dignity as well as his constitutional rights.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claim arises under the Fourth Amendment to the United States Constitution.

2. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to this claim occurred in the District of Columbia.

## PARTIES

3. Plaintiff M.B. Cottingham is an adult resident of the District of Columbia.

4. Defendant Sean Lojacono (Badge No. 10035) is a sworn officer of the D.C. Metropolitan Police Department. At the time of the events at issue, he was acting within the scope of his employment and under color of law of the District of Columbia. He is sued in his individual capacity.

## FACTS

5. M.B. Cottingham is a 39-year-old African-American man who has lived in Southeast D.C. his entire life. For the past nine years, he has worked as an ice-cream vendor, selling frozen treats out of a truck.

6. He also has worked as an entertainer, using the stage name "Moe Fargo."

7. Mr. Cottingham has three children — an 18-year-old son, a 7-year-old daughter, and a 4-year-old daughter.

8. On September 27, 2017, in the late afternoon, Mr. Cottingham and several friends were sitting on folding chairs along a public sidewalk near the intersection of Atlantic and First Streets SW.

9. The men were celebrating Mr. Cottingham's birthday and discussing where to go that evening.

10. They had just opened a bottle of alcohol, which was sitting on the ground next to the curb where a car was parked.

11. Suddenly, one marked and one unmarked police car pulled up along Atlantic Street and stopped in front of the men.

12. Several officers, including Officer Lojacono, got out of the cars and asked the men if they had any guns. They responded that they did not.

13. It is not clear from the circumstances what legitimate law enforcement purpose the officers could have had in stopping their cars and confronting this group of African-American men. The bottle of alcohol could not have been seen from the middle of the street because it was on the ground at the curb behind a parked car. None of the men was armed.

14. Mr. Cottingham picked up the bottle of alcohol and asked if the officers wanted him to pour it out.

15. One of the officers responded that he did not.

16. Officer Lojacono asked Mr. Cottingham what he had in his sock.

17. Mr. Cottingham pulled out from his sock a small, clear bag containing less than an eighth of an ounce of marijuana — a quantity that a person may legally possess under District law — and placed it on the hood of a nearby car.

18. As an African-American man in the District, Mr. Cottingham has been stopped by police many times in his life. He has been frisked in an aggressive manner several times, and beaten by police on a couple of occasions.

19. Based on Mr. Cottingham's experience, he sensed that Officer Lojacono, who is white, was about to pat him down.

20. Seeking to avoid a confrontation, Mr. Cottingham asked Officer Lojacono: "Do you need me to do the hokey-pokey?"

21. The "hokey-pokey" is street slang for turning oneself around while lifting one's shirt for the purpose of demonstrating to a police officer that one is unarmed. *Cf.* U.S. Dep't of Health & Human Servs., Nat'l Inst. of Envtl. Health Sciences, "Kids Environment Kids Health: Hokey Pokey" ("You do the Hokey-Pokey, and you turn yourself around."), *at* https://kids.niehs.nih.gov/games/songs/childrens/hokey-pokey/index.htm.

22. Officer Lojacono responded affirmatively to Mr. Cottingham's question.

23. Based on his experience of having been frisked many times by officers, Mr. Cottingham faced away from Officer Lojacono, raised his arms, and spread his legs. Mr. Cottingham was wearing sweatpants at the time.

24. Officer Lojacono did not begin by patting down Mr. Cottingham's torso or legs.

25. Instead, Officer Lojacono reached immediately between Mr. Cottingham's legs, grabbed his scrotum, felt around with his hand, and stuck his thumb in Mr. Cottingham's anus.

26. Several officers and all of Mr. Cottingham's friends looked on as the search proceeded in public, between the curb and the sidewalk of Atlantic Street.

27. Mr. Cottingham was deeply uncomfortable with and humiliated by Officer Lojacono's probing, which continued for several seconds in the area between his buttocks and on and around his scrotum.

28. Mr. Cottingham had no weapon or anything else in that area that could have been mistaken for a weapon.

29. After approximately three seconds of Officer Lojacono's search, Mr. Cottingham protested, exclaiming to his friends, "He grabbin' my shit!"

30. With Officer Lojacono's finger in his anus, Mr. Cottingham then flinched and turned part of the way back around toward Officer Lojacono, protesting, "Come on, man! Come on, man! Hold! You stuck a finger in my ass!"

31. One of Mr. Cottingham's friends stated several times to Officer Lojacono, "He don't got nothin' on him."

32. Agreeing, Mr. Cottingham said, "Yeah. Don't do that!"

33. Mr. Cottingham, distressed, repeated to his friend, "He stuck his finger in my crack, man!"

34. Mr. Cottingham again said to the officer, "Don't do that."

35. Officer Lojacono responded to Mr. Cottingham's protests by handcuffing him with his hands behind his back.

36. Mr. Cottingham continued to protest his treatment, reiterating what Officer Lojacono had done and stating that he didn't have anything on him.

37. Officer Lojacono responded: "Do me a favor. Spread your legs."

38. Mr. Cottingham, handcuffed and still trying to be polite and trying to avoid escalating the encounter, replied, "No problem," and complied.

39. Mr. Cottingham was obeying what he understood to be Officer Lojacono's command, and was not voluntarily consenting to further probing between his legs or buttocks.

40. Even though Officer Lojacono had already stuck his fingers between Mr. Cottingham's legs and buttocks and probed for several seconds, Officer Lojacono resumed searching in the same area in the manner as before, this time for six seconds and with Mr. Cottingham in handcuffs.

41. Although Mr. Cottingham was able to remain still for a few seconds, the repeated intrusion in his anus caused Mr. Cottingham to flinch again, and he cried out: "Come on man! Stop fingerin' me, though, bruh!"

42. Officer Lojacono instructed him: "Stop moving!"

43. Mr. Cottingham responded: "You fingerin' my ass, man!"

44. Officer Lojacono and Mr. Cottingham continued to argue over the propriety of the cavity search.

45. As they did so, Officer Lojacono stuck his hand between Mr. Cottingham's buttocks for a third time for an additional two seconds.

46. Mr. Cottingham protested: "Don't sit here and finger my ass like that, like I'm not a man."

47. Officer Lojacono then felt the insides of Mr. Cottingham's legs and across the front of his pants and the outsides of his pockets.

48. As he did so, Officer Lojacono continued to argue with Mr. Cottingham about whether the search was proper.

49. Officer Lojacono asked, "Did I ever say you weren't a man?"

50. Mr. Cottingham responded: "You treatin' me like it, though, bruh!"

51. Finally, Officer Lojacono removed the handcuffs, while another officer poured out the open bottle of alcohol.

52. Officer Lojacono did not find any weapons or contraband.

53. The police did not cite Mr. Cottingham or any of his friends for the open container of alcohol.

54. The police officers returned to their cars and drove off.

55. As Officer Lojacono drove away in the marked police vehicle, he seemed to taunt Mr. Cottingham and his friends, yelling through the marked car's loudspeaker, "How y'all doing world star? How y'all doing world star? (inaudible) free the workforce!"

56. One of Mr. Cottingham's friends captured much of the incident on video via his cellphone. As of the filing of this complaint, that video is available here: https://www.youtube.com/watch?v=zXILS80IyyU

57. Mr. Cottingham understood that the term "world star" was a reference to the video.

58. At a D.C. Council hearing on June 12, 2018, Chief of Police Peter Newsham acknowledged that he had seen the video of the encounter. He stated, "It looked like it was an inappropriate touching by the officer." He also stated that the officer had been disciplined but is still on active duty with the D.C. Metropolitan Police Department.

59. The encounter with Officer Lojacono left Mr. Cottingham deeply disturbed and shaken.

60. The experience itself was humiliating — the most private areas of Mr. Cottingham's person were invaded three times by a police officer, including twice while Mr.

Cottingham's hands were cuffed behind him, all in public in front of other officers and Mr. Cottingham's friends.

61. Mr. Cottingham continues to suffer emotional distress following the incident, including anxiety and depression, and the feeling that he has been stripped of his dignity.

62. Mr. Cottingham feels increased anxiety around police officers, whom he regularly encounters in his neighborhood.

63. For one to two weeks after the encounter with Officer Lojacono, Mr. Cottingham felt discomfort in his rear end and was physically uncomfortable sitting down for extended periods of time. He also experienced some discomfort during bowel movements.

64. For weeks following the encounter, Mr. Cottingham did not want to go out in public, and he wanted to be alone. He also felt angry and sometimes lashed out at family members and people close to him.

65. Mr. Cottingham's son laughed at him when he learned of the incident. Mr. Cottingham's daughters asked him why the police were messing with him.

66. Because of the trauma of the searches by Officer Lojacono, Mr. Cottingham did not work his ice cream truck for approximately one month, resulting in lost income. He tried to go out and work one or two days that first month but was too uncomfortable. He finally returned to working the truck after a month because he needed the income.

67. Because of the trauma of the searches by Officer Lojacono, Mr. Cottingham has stopped working as an entertainer. He had one entertaining gig scheduled in early October 2017 at which he did not perform, resulting in lost income. Mr. Cottingham has not sought out other entertaining jobs or performed at all in public; as a result, he has lost income.

## CLAIM FOR RELIEF

### Violation of Fourth Amendment Rights / 42 U.S.C. § 1983

68. Plaintiff has a constitutionally protected right under the Fourth Amendment to the United States Constitution to be free from unreasonable searches and seizures by government officers.

69. Defendant Lojacono's actions, under color of law, in repeatedly jamming one or more fingers into Mr. Cottingham's anal cavity and grabbing his genitalia, all on a public street and without a warrant, probable cause, reasonable suspicion, or consent to the scope of this intrusion, violated Mr. Cottingham's rights under the Fourth Amendment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

a) RULE that the actions of Defendant Lojacono violated Plaintiff Cottingham's rights under the Fourth Amendment to the United States Constitution;

b) ENTER JUDGMENT awarding Plaintiff Cottingham compensatory and punitive damages in an amount commensurate with the proof adduced at trial;

c) AWARD Plaintiff Cottingham costs and reasonable attorneys' fees in this action; and

d) GRANT Plaintiff Cottingham such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

                    Respectfully submitted,

                    */s/ Scott Michelman*
                    Scott Michelman (D.C. Bar No. 1006945)
                    Arthur B. Spitzer (D.C. Bar No. 235960)
                    Shana Knizhnik (D.C. Bar No. 1020840)
                    American Civil Liberties Union Foundation
                        of the District of Columbia
                    915 15th Street NW, Second Floor
                    Washington, D.C. 20005
                    (202) 457-0800
                    smichelman@acludc.org

July 18, 2018              Counsel for Plaintiff